The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modification. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employee-employer relationship existed between the plaintiff and the defendant at the times in question.
3. The defendant is self-insured with North Carolina School Board Insurance Trust as the Administrator.
4. The plaintiffs average weekly wage is $157.50 per week.
5. Defendant admits that employee-plaintiff sustained an injury on or about July 14, 1992.
6. Defendant admits the injury arose out of and in the course of employment and is compensable.
7. Medical records and other documents have been stipulated into evidence with the Pre-Hearing Agreement, marked as Stipulated Exhibit #1. Also included are documents attached to the prior Pre-Hearing Agreement of June 25, 1996, marked as Stipulated Exhibit #2. The supplemental Form 33 dated August 25, 1998, the Form 33R dated August 27, 1998 and defendants accompanying letter dated August 27, 1998 are also included as part of the record.
8. The issues for decision are whether the employee-plaintiff had a substantial change of condition since the last hearing on June 25, 1996, to what further compensation he may be entitled, and whether the defendant should be ordered to provide re-training.
9. The previous Opinion and Awards of former Deputy Commissioner Dillard and Deputy Commissioner Garner are part of the record in this matter.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. The plaintiff is a twenty-four year old male who was employed by defendant as a seasonal employee during the summer of 1992. On July 14, 1992, plaintiff sustained a compensable right knee injury when a riding lawnmower overturned and caused him to fall off. The defendant accepted the compensability of this claim on a Form 21 filed with the North Carolina Industrial Commission on November 10, 1992.
2. As a result of his admittedly compensable injury, the plaintiff underwent reconstructive surgery of the anterior cruciate ligament to the right knee, which was performed by Dr. Alfred Moretz on September 24, 1992. That surgery was unsuccessful, and on November 19, 1993, Dr. Jerry Barron performed a second right knee surgery, which repaired the failed ACL reconstruction and a radial tear of the lateral meniscus.
3. A hearing took place on August 23, 1993 before former Deputy Commissioner Roger Dillard, Jr. on the issue of the plaintiffs average weekly wage. Following that hearing, an Opinion and Award was filed on November 23, 1993, setting the plaintiffs average weekly wage at $157.50 per week, yielding a compensation rate of $105.00 per week.
4. The plaintiffs postoperative course of treatment was uneventful. On June 17, 1994, Dr. Barron released the plaintiff at maximum medical improvement with a 20% permanent partial disability rating to the right knee.
5. From July 1994 through 1996, the plaintiff worked for a number of employers. He worked for Built Write Frame Company from October 1994 to January 1995. When that company went out of business, he immediately began working as a truck driver for Solar Power One, a job that lasted from January to April 1995. The plaintiff continued to experience some continued pain and swelling of his right knee during this period; however, he did not leave work until the company moved its operations overseas.
6. A second hearing took place in this matter on June 25, 1996, before Deputy Commissioner Edward Garner, Jr. The issues involved in that hearing were whether the condition of the plaintiffs knee resulted from the injury of July 14, 1992, and whether the plaintiff was entitled to authorization of additional knee surgery or other treatment prescribed by the plaintiffs treating physician. An Opinion and Award was filed on January 21, 1997, awarding benefits for future medical treatment and temporary and total disability benefits necessitated by further surgical procedures on the plaintiffs right knee.
7. After June 26, 1996, plaintiffs right knee condition worsened, so the defendants authorized a third surgery, which was performed on plaintiffs right knee by Dr. Barron on December 5, 1996. The plaintiffs post-operative knee condition was good.
8. Plaintiff began work for Old Hickory Tannery in February of 1997. His position required him to operate saws and lift boards of lumber ranging from 15 to 60 pounds. Plaintiff was capable of performing his job duties; however, plaintiff quit his job at Old Hickory Tannery in July of 1997 for reasons unrelated to his knee.
9. On June 4, 1997, plaintiff reached maximum medical improvement and was assigned an increased permanent partial impairment of 25% to the right knee.
10. On January 30, 1998 Dr. Barron evaluated plaintiff as needing re-training for a less strenuous job with minimal kneeling, squatting and climbing.
11. On February 9, 1998, the plaintiff met with Mr. Donald Richardson of the North Carolina Vocational Rehabilitation Service in an effort to find employment. Plaintiff also sought assistance from the Employment Security Commission. On June 10, 1998 the plaintiff was hired by Progressive Furniture as a forklift operator, at a wage of $7.87 per hour. Plaintiff was only able to work through June 28, 1998 because Progressive changed plaintiff to a job which required heavy lifting, bending and stooping. Plaintiff was unable to perform these new job duties because of his right knee condition, and left the company.
12. Since leaving Progressive, plaintiff has been to several companies in an effort to find employment, including a trucking company, furniture factories and temporary services. As of the date of the hearing before Deputy Commissioner Stanback, plaintiff had not secured employment.
13. Plaintiff has completed the eighth grade, and has been unsuccessful in obtaining a G.E.D. His prior work experience has generally involved heavy manual labor.
14. As a result of his compensable right knee injury of July 14, 1992, plaintiff was unable to earn the same or greater wages than his pre-injury wages beginning June 29, 1998.
15. Considering his lack of education, his heavy labor work experience, and his right knee condition, plaintiff has been unable to secure any employment since his last job, which ended June 28, 1998. Plaintiff is in need of additional vocational rehabilitation in order to be re-trained to obtain employment within his physical limitations. Plaintiff currently has complaints of burning, bruising, swelling, popping, pain, "grinding sensations in his right knee, as well as right leg" give aways.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Since the June 26, 1996 hearing, inasmuch as plaintiff underwent additional surgery on December 5, 1996 and has had an increase, to 25%, of the permanent partial disability rating to his leg as of June 4, 1997, plaintiff sustained a substantial change of condition when he lost the ability to earn income as of June 29, 1998. G.S. 97-47.
2. As a result of his original injury by accident of July 14, 1992, and his subsequent change of condition, plaintiff is entitled to total disability compensation, payable by defendant, beginning June 29, 1998 at the rate of $105.00 per week through the date of the hearing, and continuing until further Order of the Commission. G.S. 97-29.
3. Plaintiff is entitled to vocational rehabilitation services, payable by defendant. G.S. 97-25.
4. Plaintiff is entitled to payment by defendant of medical expenses incurred as a result of his original injury by accident of July 14, 1992. G.S. 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorneys fee in Paragraph 4, defendant shall pay to plaintiff total disability compensation at the rate of $105.00 per week, beginning June 29, 1998 and continuing until further Order of the Industrial Commission. Any accrued amounts shall be paid to plaintiff in one lump sum.
2. Defendant shall provide vocational rehabilitation services for the plaintiff.
3. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or may tend to lessen the employees period of disability, when bills for same have been submitted according to proper Industrial Commission procedure.
4. An attorney fee of 25% of the compensation awarded in Paragraph One is approved for plaintiffs counsel and shall be paid as follows: Twenty-five percent of accrued compensation plus every fourth check thereafter shall be paid directly to plaintiffs counsel.
5. Defendant shall pay the costs due to the Commission.
This the ___ day of May, 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________ RENE C. RIGGSBEE COMMISSIONER